D. J. & A. B. Gove *vs.* Andrew J. Moses.

Courts should be reluctant to set aside verdicts where there is evidence to support the verdict, or where the evidence is of doubtful interpretation.

Where action is brought against two persons on a joint liability, a verdict cannot be sustained unless a joint liability is proven.

Power of masters to bind owners of vessels.

Objection of non-joinder should be taken at proper stage of proceedings.

In this case the master could not at the same time act as agent of the shipper and the owner, but he could act as agent of the former after his duty as master was at an end.

Error to the Second Judicial District holding terms at Olympia.

Opinion by Lander, Chief Justice.

This cause is submitted to the Court on an agreement of parties that the depositions, together with the letters shown by the transcript to have been used in the trial of the cause in the Court below, are to be taken as the evidence. By these it appears that the plaintiffs in error, A. B. and D. J. Gove, were, one the master, and the other, together with Samuel Merritt of San Francisco, owner of the barque *Sarah Warren*, a vessel plying between Olympia and San Francisco. A. B. Gove and Samuel Merritt were also partners in a store in Olympia. The defendant in error, A. J. Moses, acted as agent of Ensign & Sterling, a firm often dealing in lumber in San Francisco. The barque *Sarah Warren*, D. J. Gove, Master, was sent to him by Ensign & Sterling, to be loaded in pursuance of a charter party. He declined to load the vessel under the charter, as agent of Ensign & Sterling, but entered into an agreement with the master, D. J. Gove, by which he was to furnish a cargo for the vessel; which cargo was to be carried to San Francisco on the terms of the original charter party. The master was to act as consignee of the cargo and to receive as pay, in lieu of commissions, certain stove-wood then on board the vessel. At that time a draft was drawn by A. J. Moses on D. J. Gove, (as stated by one witness) in favor of C. Berg, for $1,000, payable after the sale of the cargo. D. J. Gove promised to pay it or see it paid. The vessel sailed in pursuance of the contract, for San Francisco, and on her arrival, Samuel Merritt is shown by other testimony to have acted as consignee. He, himself states that he did so at request and by the authority of D. J. Gove, and appears either to have bought the cargo himself or to have sold it to one Galloway, of San Francisco.

On this point the testimony is conflicting. Galloway received the cargo and paid Samuel Merritt for it. The master, writing to A. J. Moses, says, in substance and in the language of the letter, that "times were hard, but we sold before the fleet arrived and got 35 cents for the piles and timber; we could not have got 35 cents for this cargo." The draft was presented by Conrad Berg to Samuel Merritt, who endorsed on it that he would pay whatever might be found due upon it after the sale of the cargo and charges and expenses paid. The sum of $619.54 was paid on the balance due after deducting freight and demurrage. There are letters referring to the charter-party entered into with Ensign & Sterling, but they were not deemed material in the consideration of the case. There is also testimony as to the value of piles and square timber, of which the cargo consisted, at that time in San Francisco. The action was brought against A. B. and D. J. Gove, and the jury found a verdict for the plaintiff for the sum of $797.15. The defendants moved the Court for a new trial, and assigned their reasons and excepted to the over-ruling of the motion by the Court, which is the only error relied on for the reversal of the judgment. As no exception was taken to the instructions given to the jury below, it is to be presumed that the law was correctly stated to the jury by the Court. To set aside the verdict of a jury, who, after a fair and impartial trial, have decided upon the evidence before them, is always a delicate and difficult task for a Judge presiding in a Court below, and when in the exercise of his discretion he has refused to set aside a verdict and to grant a new trial, as he is presumed to know the facts in the case fully, nothing but an abuse of discretion on the part of the Court, or a great preponderance of evidence against the verdict, will cause this Court to interfere. If the proof is of doubtful interpretation, or there is evidence to support the verdict, it will not be disturbed.

In this case, the agreement of counsel, has presented to the Court only the depositions and letters used upon the trial, and what other testimony was in the Court below, to guide it in the exercise of its discretion, does not appear, and we are left to form our own opinion upon the case presented to us.

The judgment in this case is against two defendants. To sustain it, there must be evidence to connect both of the defendants with the transaction, and to give a legal liability against both. It is not sufficient that the plaintiff had a right to recover the amount of this judgment against D. J. Gove. He must also have a right to recover against A. B. Gove, and that liability must be joint. D. J. Gove was the master of a vessel called the *Sarah Warren*, of which A. B. Gove was the part owner, and it is clear that in the scope of his authority as such master, he had the power to make all contracts for repairs and necessaries for the vessel, and to make contracts of affreightment to bind his owners as common carriers, to the safe delivery of the freight entrusted to him. To do more, and to bind his owners not only to the safe delivery of the cargo, but to a safe return of the proceeds of it afterwards, would require a state of facts, by which it should appear, that the freight of the cargo was the compensation for the safe delivery of the cargo and the safe return of the proceeds—that the contract was entire. This might be done by agreement, or even perhaps by the owners receiving their portion of the extra compensation paid the master for the performance of other than his usual duties. In thus selling the cargo and returning the proceeds—as by proof of the usage of trade, *Kemp vs. Coughtry*, 11 Johnson 107, the joint liability of the owners and master were established.

This failure to join all the parties to the contract in the same action would not be fatal to the plaintiff, if the defendants did not take advantage of the non-joinder of all the joint contractors at the proper stage of the proceedings. But while it is not competent for him to act as agent both of the shipper and of the owner—as master to safely deliver the cargo entrusted to his care, and as consignee to sell it for the benefit of the shipper—his duty as agent for one commences when his agency for the other ceases. See *Williams vs. Nichols*, 13 Wendell 48. At the end of the voyage, when the vessel has safely reached her point of destination, the liability of the owners to the shipper ceases, and that of the consignee begins. The consignee

is alone responsible, if the master is constituted such consignee, to him alone can the owner of the cargo look.   It is plain that in this case the shipper of the cargo, A. J. Moses, consigned it to the master of the vessel, D. J. Gove.   The commission was paid before it was earned, he had received the cord-wood on board as his compensation, and there is not a particle of evidence to show that any portion of this compensation was ever received by the owners of the *Sarah Warren*.   The evidence shows an agreement to this effect.   The plaintiff elected his consignee, paid to him a compensation separate and distinct from the freight.   If, on his arrival at San Francisco, the consignee chose to employ one of the owners of the vessel to perform the task he had undertaken, it would not discharge him from the liability of his employer as his paid agent.   He was still responsible for the proper transaction of his business, and the safe return of the proceeds of the sale.   The owner was but his agent in the discharge of his duty, and while the master was thus responsible to the shipper, Merritt, the part owner is no less responsible to him.

Whatever might have been the position of this case, had the action been brought against Samuel Merritt and D. J. Gove, and the verdict and the judgment against them, there is nothing to connect the defendant, A. B. Gove, with the master, D. J. Gove, or to impose on him a joint liability with him (in the view of the case as taken by the Court) as joint owner of the vessel. This liability ceased on the safe delivery of the cargo, unless (of which there is no evidence) he authorized or approved the act of the master in the sale of the cargo.   The conduct of his business partner in Olympia and joint owner of the vessel in San Francisco, so far as that might create a joint liability with the master is not shown to be in any way with his consent at the time, or to have been approved by him afterwards.

There being then no evidence, in the opinion of the Court, that fixes upon A. B. Gove a joint liability with D. J. Gove, the other defendant in this cause, the verdict of the jury must be set aside, under the 6th sub-division of section 216 of the civil practice act, for insufficiency of the evidence to justify the verdict.

The judgment is reversed, and the cause remanded to the District, and a *venire de novo* awarded.

NOTE.—No term of the Supreme Court was held in the year 1856, on account of the Indian war.